# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re ] | Civil Action No. 23-1046 (R.D.M.) |
| ] | |
| ERIN MICHELLE ROSEBAR ] | |
| *Debtor,* ] | Appeal of Adver. Case No. 20-10011 |
| ] | U.S. Bankruptcy Court of D.C. |
| DAVID BROOKS ] | |
| , *Appellant/Plaintiff* ] | |
| ] | |
| v. ] | |
| ] | |
| ERIN MICHELLE ROSEBAR, ] | |
| *Appellee.* ] | |
| ] | |

## Appellant's Brief

David Brooks
8302 Westmont Ter.
Bethesda, MD 20817
(240) 386-8760
dbrooksdc@comcast.net

RECEIVED

JUN - 6 2023

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

# Table of Contents

Table of Authorities.................................................................................... i

Corporate Disclosure ............................................................................... 1

Jurisdictional Statement ........................................................................... 2

Statement of Issues Presented ................................................................. 3

Statement of the Case .............................................................................. 4

Summary of Argument............................................................................. 12

Argument

    A. Judge Gunn failed to afford Plaintiff due process required by FRBP 9027(d) , FRBP 9014(a). and FRBP 9013.  ................................... 13

    B. Judge Gunn's assumption that there was an open case in Superior Court was incorrect. .................................................................................. 14

    C. Dismissal causes Plaintiff extreme prejudice............................................ 15

    D. Judge Gunn's Order dishonors the law-of-the-case................................. 16

    E. Judge Gunn used an incorrect standard for determining voidness under Rule 60(b)(4) ........................................................................................ 18

    F. Judge Teel's judgment was not void because there were at least nine arguable bases for retaining jurisdiction of the adversary proceeding after the main bankruptcy case had been dismissed...................................... 22

        Basis 1. Material delay was associated with remand due to closure of Superior Court.................................................................................. 22

        Basis 2. Short proximity of the case to resolution ................................. 24

        Basis 3. Authorities state that courts should retain jurisdiction of adversary proceedings in bankruptcy cases in which the defendant has procured dismissal ................................................................................ 27

        Basis 4. Avoidance of wasted time and duplication of effort ................ 24

        Basis 5. Judge Teel had experience with parties, was familiar with the subject matter, and had expertise in valuing businesses......................... 30

        Basis 6. Judicial economy. Appeals are not judicially economic........... 31

Basis 7. Fairness and convenience. Judge Gunn's grievances are not supported by the Record and are not relevant to the issue of fairness as defined by her authorities. ...................................................................... 33

Basis 8. Defendant consented to jurisdiction of Bankruptcy Court.. ..... 39

Basis 9. Judicial discretion ...................................................................... 40

E. The default judgment issued by Judge Teel was not defective. ................ 41

1. Relief not available for grounds not contained in Motion.................. 41

2. Relief is not available under Rule 60(b)(1) ....................................... 42

3. Judge Gunn's understanding of the decision of the Court of Appeals is clear error .............................................................................................. 43

4 Judge Gunn's assumption regarding the Superior Court's denial of Plaintiff's motion for summary judgment is clear error........................... 43

5. Judge Gunn's assertion that a party requesting a default judgment has a burden to "prove up the elements in their case" was explicitly rejected by the Court of Appeals ................................................................ 44

6. The cases cited by Judge Gunn do not support her assertion that Judge Teel "*errantly* presumed an immediate right to a default judgment." ... 46

7. Relief under Rule 60 (b) is not available for empty exercises........... 49.

Conclusion........................................................................................................ 50

Certificate of Compliance ............................................................................... 50

## Table of Authorities

*Anderson v. Gallman,* 99 A.2d 560, 561 (D.C.1953)................................................ 44

*Arizona v. California,* 460 U.S. 605, 618 (1983) ....................................................... 16

*Baella-Silva v. Hulsey*, 454 F.3d 5, 9-10 (1st Cir. 2006) ........................................... 22

*Burns v. Fannie Mae* No. CC-17-1082, 2018 Bankr. ............................................... 31

*Chapman v. Currie Motors, Inc.*, 65 F.3d 78, 81 (7th Cir. 1995) .......................... 27

*Chris Di Ferrante v. Donald Young,* Adv No. 06-03195 Bankr.S.D. Tex, (2007)... .
24, 25, 29, and 37

*Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 817 (1988) ............... 16

*DiRaffael v. California Mil. Dep't;* , 593 F. App'x 679, 680 (9th Cir. 2015).......... 19

*Douglas v. District of Columbia Housing Auth.*, 306 F.R.D. 1, 5 (D.D.C. 2014).. 41

*Fafel v. Dipaola*, 399 F.3d 403, 411 (1st Cir. 2005)................................................ 22

*Flynn v. Masonry*, 233 F.R.D. 176, 177 (D.D.C. 2005)........................................... 46

*Geddes v. United Financial Group,* 559 F.2d 557, 560 (9th Cir.1977)................. 44

*Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980) .... 41

*Gordon v. Monoson;* , 239 F. App'x 710, 712 n.3 (3d Cir. 2007)........................... 19

*Gschwind v. Cessna Aircraft Co.*, 232 F.3d 1342, 1345–46 (10th Cir. 2000).. 19, 21

*Huff v. 21st Mortg. Corp. (In re Huff)*, Nos. 2:17-bk-20290, 2:17-ap-2014, 2021,
Bankr .................................................................................................................. 33.

LEXIS 2668, at *17 (Bankr. S.D. W. Va. Sep. 28, 2021)................................ 33, 46.

*Hunter v. Underwood;* , 362 F.3d 468, 476 (8th Cir. 2004), ................................... 19

*In Butler v. United States*, 268 A.2d 862, 864 (D.C. 1970).................................... 19

*In re Dawson,* 411 B.R. 1 (Bankr. D.D.C. 2008),  ........................................... 24, 37

*In re G.A.D., Inc* ., 340 F.3d 331, 336 (6th Cir. 2003)............................................ 19

*In re Morris*, 950 F.2d 1531 (11th Cir. 1992)......................................................... 39

*In re Oxley Dev. Co., LLC*, 493 B.R. 275, 287 (Bankr. N.D.
Ga. 2013) ................................................................................... 23, 28, 37, 38

*In re Pocklington,* 21 B.R. 199 (Bankr.S.D.Cal.1982)............................................ 32

*In re Porges*, 44 F.3d 159 (2d Cir. 1995) ................................................................ 24

*In Re Roma Group, Inc.*, 137 B.R. 148 (Bankr. S.D.N.Y. 1992)........................... 32

*In Re: Sam Alberts, Trustee, DCHC Liquidating*, No. 1:2012cv00564,
(D.D.C. 2013) ...................................................................................................... 30

*In re Smith,* 866 F.2d 576 (3d Cir. 1989)................................................. *24, 29, 32*

*In re Stardust Inn, Inc.,* 70 B.R. 888 (Bankr.E.D.Pa.1987),  ................................ 32

*In re Statistical Tabulating Corp. Inc.*, 60 F.3d 1286, 76 A.F.T.R.2d (P-H)
5863 (7th Cir. 1995) ........................................................................................... 27

*In re Talon Holdings, Inc.*, 221 B.R. 214 (Bankr. N.D. Ill. 1998)......................... 36

*Int'l Painters & Allied Trades Indus. Pension Fund v. K & J Erectors LLC*, No.
04-1236 (RMU), 2006 U.S. Dist. LEXIS 16994 (D.D.C. Mar. 27, 2006)............. 46

*Jones v. Health Res. Corp.*, 509 A.2d 1140 (D.C. 1986) ........................................ 46

*Kritsidimas v. Sheskin*, 411 A.2d 370, 371 (D.C.1980). ...................................... 16

*LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996).................................. 15

*Lee Mem'l Hosp. v. Becerra*, 10 F.4th 859 (D.C. Cir. 2021) ............................... 19

*Lockhart v. Cade* , 728 A.2d 65, 68–69 (D.C. 1999) ................................ 43, 44,45

*Lubben v. Selective Service System Local Board No. 27,* 453 F.2d 645 (1st
Cir. 1972).................................................................................................................. 20

*Marseilles Hydro Power LLC v. Marseilles Land & Water Co.*, 481 F.3d 1002,
1004 (7th Cir. 2007) ............................................................................................... 16

*Maryland ex rel. John F. Casey Co. v. Travelers Indemnity Co.,* 197 A.2d 265,
266 (D.C.1964)......................................................................................................... 44

*Mathews v. Ellison* (In re Ellison), C/A No. 19-05203-jw, Adv. Pro. No.
20-80001-jw, slip op. (Bankr. D.S.C. Apr 23, 2020)...................................... 25

*Matthews, Wilson & Matthews, Inc. v. Cap. City Bank*; , 614 F. App'x 969, 971
(11th Cir. 2015) ...................................................................................................... 19

*Mays v. Burgess*, 152 F.2d 123, 124-25 (D.C. Cir. 1945)................................... 16

*Minch v. City of Chicago*, 486 F.3d 294, 301 (7th Cir. 2007) ............................. 16

*Morrow v. District of Columbia*, 417 F.2d 728, 740 (D.C. Cir. 1969) .................. 31

*Munoz v. Board of Trustees of Univ. of Dist. of Columbia*, 730 F. Supp. 2d 62,
69 (D.D.C. 2010) .................................................................................................... 41

*Murray v. District of Columbia,* 52 F.3d 353, 355 (D.C. Cir. 1995)................... 48

*Nemaizer v. Baker,* 793 F.2d 58 (2d Cir. 1986) ........................................ 3, 19, 20

*New England Wood Pellet, LLC v. New England Pellet, LLC*, 419 B.R. 133,
141 (D.N.H. 2009)................................................................................................... 39

*Norman v. United States,* 467 F.3d 773, 775 (D.C. Cir. 2006)........................... 48

*Oliver v. Mustafa*, 929 A.2d 873 (D.C. 2007)........................................................ 45

*P.P.P. Productions, Inc. v. W L, Inc.,* 418 A.2d 151, 152 (D.C. 1980) ................ 17

*Pierce v. Deutsche Bank Nat'l Trust (In re Pierce),* No. 19-05271, 2019
Bankr. ....................................................................................................................... 31

*Ramey v. Hewitt*, 188 A.2d 350, 351 (D.C.1963) ................................................. 44

*Rodriguez v. Volpentesta (In re Volpentesta)*, 187 B.R. 261, 270
(Bankr. N.D. Ill. 1995) ........................................................... 25, 26, 27, 29, 38, 39

*Sivaraman v. Guizzetti & Assocs.*, 228 A.3d 1066 (D.C 2020)...................... 43, 44

*Smalls v. United States*, 471 F.3d 186, 191 (D.C. Cir. 2006) .............................. 35

*Taitz v. Obama*, 754 F. Supp. 2d 57, 61 (D.D.C. 2010)........................................ 41

*Taylor v. Johnson,* 262 A.2d 803, 804 (D.C. 1970) .............................................. 44

*Tennille v. Tennille*, 791 A.2d 79, 83 (D.C. 2002) ............................................... 25

*Trans World Airlines, Inc. v. Hughes,* 449 F.2d 51, 70 (2d Cir.1971)................... 44

*United States v. Boch Oldsmobile, Inc.*; 909 F.2d 657, 661 (1st Cir. 1990)..... 19, 20

*United States v. DiMucci*, 879 F.2d 1488, 1497 (7th Cir.1989) ............................ 44

*United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269–70,
130 S.Ct. 1367, 176 L.Ed.2d 158 (2010) ............................................... 19
*Vega v. Trinity Realty Corp.*, 2021 WL 738693, (S.D.N.Y. Feb. 24, 2021)........... 22
*Walsh v. Hagee*, 10 F. Supp. 3d 15, 19 (D.D.C. 2013) ............................................ 41
*Wendt v. Leonard*, 431 F.3d 410, 414–15 (4th Cir. 2005) ...................................... 19
*West v. Holder*, 309 F.R.D. 54, 56 (D.D.C. 2015) .................................................... 41

FRBP 9013 .................................................................................................. 13, 41
FRBP 9014(a) ................................................................................................... 13
FRBP 9027(d) ................................................................................................... 13

FRCP 60(b)(1) ................................................................................................... 13
FRCP 60(b)(4) ................................................................................................... 11

Superior Court Rule of Civil Procedure 55(b)(2)...................................................... 5

11 U.S.C. § 109(g)(1) ........................................................................................ 7
28 U.S.C. § 1452 .................................................................................... 1, 23, 31

11 Charles Alan Wright et. Al., Federal Practice and Procedure. § 2862.............. 17
46 Am.Jur.2d Judgments § 266 ................................................................................ 44
B. Finberg, Annotation, Necessity of Taking Proof as to Liability against
Defaulting Party, 8 A.L.R.3D 1070, 1073 (1966)..................................................... 44
Restatement (Third) of The Law Governing Lawyers (2000) ........................ 17, 36

## Corporate Disclosure Statement

David Brooks ("Plaintiff"), appellant herein, is a natural person so no corporate disclosure statement is required.

## Jurisdictional Statement

Section 157(b)(1) of Title 28 U.S.C. provides that "bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11." A proceeding to liquidate a previously unliquidated debt falls within this Court's subject matter jurisdiction as a proceeding "arising in" a case under title 11.

The adversary proceeding, which is the subject of this appeal, began as a case in Superior Court, which Plaintiff removed to the Bankruptcy Court under 28 U.S.C. § 1452, after the defendant filed bankruptcy. The Honorable S. Martin Teel ("Judge Teel") adjudicated the case and issued a judgment in Plaintiff's favor. However, after Judge Teel retired, the Honorable Elizabeth L. Gunn ("Judge Gunn") declared that Judge Teel's judgment was void because in her opinion, Judge Teel had abused his discretion by retaining jurisdiction of the proceeding after he dismissed the underlying bankruptcy case.

Section 158(a)(1) of Title 28 of the United States Code gives "The district courts of the United States" jurisdiction to hear appeals "from final judgments, orders, and decrees." 28 U.S.C. § 158(a)(1).

1

The appeal satisfies FRBP 8002 because Plaintiff filed his notice of appeal on April 11, 2023, which was less than 14 days after the entry of Judge Gunn's order on March 29, 2023. The appeal complies with FRBP 8009 because Plaintiff filed his designation of the items to be included in the Record and a statement of the issues to be presented on April 20, 2023, which was within 14 days after the notice of appeal became effective. The appeal satisfies FRBP 8018 because appellant filed his brief within 30 days of the docketing of the notice that the Record had been transmitted on May 12, 2023.

This appeal concerns a final order of the Bankruptcy Court.

## Statement of Issues Presented and Applicable Standard of Review

This appeal asks the District Court to decide whether the Honorable Elizabeth L. Gunn ("Judge Gunn") erred by declaring a judgment void that was issued by the Honorable S. Martin Teel ("Judge Teel"), because in Judge Gunn's opinion Judge Teel had abused his discretion by retaining jurisdiction of the proceeding after dismissal of the underlying bankruptcy case and by not addressing whether Plaintiff's complaint "was sufficient to entitle the Plaintiff to a default judgment for defamation."

When a district court reviews a decision of a bankruptcy court, it reviews the factual findings for clear error and its legal conclusions *de novo*.

2

An alleged "error of law in determining jurisdiction" does not make a judgment void. For a judgment to be considered void under Rule 60(b)(4), there must be "a clear usurpation of power." A court

> does not plainly usurp jurisdiction when it merely commits an error in the exercise of that power. Rather, a court will be deemed to have plainly usurped jurisdiction only when there is … no arguable basis on which it could have rested a finding that it had jurisdiction. When a … court has not explicitly noted why it assumed jurisdiction over a suit, appellate courts will independently examine the Record to determine whether a reasonable basis existed for the lower court's implicit finding that it had jurisdiction. *Nemaizer v. Baker,* 793 F.2d 58 (2d Cir. 1986)

**Statement of the Case**

On Dec. 18, 2014, David Brooks ("Plaintiff") sued Erin Rosebar ("Defendant") and Michael Rosebar ("Defendant's husband") in Superior Court for publishing defamatory "reviews", which caused Plaintiff's company to go out of business. (App. 48-59).

Plaintiff attempted to depose Defendant multiple times, but she either did not show up, spewed obscenities, or refused to answer questions at the scheduled depositions, notwithstanding court orders to comply.[1] After monetary sanctions had failed to achieve her compliance, the Superior Court entered a default against Defendant on May 19, 2016 for obstruction of discovery and egregious conduct throughout the case (App. 60-75). Plaintiff did not request an *ex parte* proof hearing as required, and the court, believing that the parties had entered a settlement agreement, dismissed the case with prejudice, Plaintiff filed an appeal.

While the appeal was pending in the D.C. Court of Appeals, Defendant and her husband were arrested for multiple counts of fraud. A trial was conducted and Defendant's husband was sentenced to ten years in prison. (D.D.C. Criminal Case No. 16-CR-018 (T.F.H.)). Defendant took a plea deal and served probation. Defendant's husband's incarceration is relevant for reasons later explained.

---

[1] For example, at her first aborted deposition, Defendant stated, "I'm not telling you shit…Fuck you…You piece of shit…You are wasting my fucking time here, and I'm not telling you shit, not a mother-fucking thing, you stupid ass." (App. 60-69)

On Jul. 19, 2019, the Court of Appeals sent Plaintiff's case back to the Superior Court. The Court of Appeals found that the parties had <u>not</u> entered a settlement agreement and that the Superior Court should have given Plaintiff an opportunity to be heard in court and made reasonable accommodation to help Plaintiff understand the status of his claim against Defendant and how to convert the default to a default judgment. The Court of Appeals reversed the dismissal and remanded the case back to the Superior Court.(App. 238-254 )

On Jul. 23, 2019, the Superior Court re-opened the case, assigned it to a new judge and notified the parties that an initial status hearing would take place on Nov. 8, 2019. (App. 255). On Sep. 23, 2019, Plaintiff filed a praecipe requesting that pursuant to Superior Court Rule of Civil Procedure 55(b)(2), the Court "set an *ex parte* proof hearing for judgment against Defendant" (App. 256)

Plaintiff appeared in Superior Court on Nov. 8, 2019, but the hearing was not held because Defendant said she needed more time to find an attorney. (App. 45) The Court continued the matter until Jan. 10, 2020 (App. 46). Plaintiff appeared on Jan. 10, 2020, but the hearing was still not held

because Defendant said that she had filed bankruptcy.[2] (App. 46, 257-288).

On Mar. 19, 2020 the Superior Court stopped conducting hearings due to

Covid (App. 1039) The initial status hearing was continued to Oct. 30, 2020

(App. 46-47). Since the initial status hearing had to be held before an *ex*

*parte* proof hearing for damages could be scheduled, the soonest that an *ex*

*parte* proof hearing could have been scheduled in Superior Court was

December, 2020, assuming that Defendant did not request more

continuances, would have been in December of 2020 (17 months after the

case was re-opened.

Meanwhile at the Section 341 Meeting in Defendant's bankruptcy case,

Defendant testified that for the last four years, she had been shielding

income and assets from garnishment by using bank accounts in her parents'

name, which she had not disclosed in her bankruptcy schedules. (App. 290,

293-295).

Defendant requested that Plaintiff remove his case against Defendant

from Superior Court to Bankruptcy Court so that all litigation could be

litigated in the same court.

> BENNIE BROOKS (attorney for Erin Rosebar): There's no need
> to take this to … the Superior Court to have it litigated…(B)ased
> upon what was actually testified to and given at the last hearing on

---

[2] Defendant and/or her husband filed five Bankruptcy cases, all of which were dismissed by the Court. (case nos. 08-000132, 08-000345, 13-00535, 19-00391, 20-00006)

the 4th and the fact that this court has subject matter jurisdiction,
it would be a waste of time and resources and it would not be
judicious for the litigation to go forward in the Superior Court.
(App. 304-305)

Plaintiff filed a proof of claim, which included his unliquidated claim for

defamation. (App. 1217)  Plaintiff also filed a Notice of Removal (as

Defendant requested) and Motion to Enlarge Time to File Record,[3] (App.

363-457)

At a status hearing on May 28, 2020, the Bankruptcy Court asked

Plaintiff about Michael Rosebar (who is still in prison and from who it

would be very difficult to collect a judgment). Plaintiff explained that if he

received a judgment against Defendant, he would dismiss her husband.(App.

447 line 21 – 448 line 4)

In light of the pandemic barring courtroom hearings, the Bankruptcy

Court ordered Plaintiff to prepare a statement of his damages supported by

affidavit and Defendant to prepare an opposition. The Court said it would

address both filings at the continued hearing on Jul. 9, 2020. (App. 1046).

Meanwhile in the main bankruptcy Defendant refused to comply with an

order commanding her to produce documents. (App. 306-315) The Court

ordered her to show cause why her bankruptcy case ought not to be

---

[3] The Notice of Removal had been mailed to the Superior Court on March 21, 2020, but due to closure and an apparent backlog in the Clerk's office it was not docketed until July 23, 2020.

dismissed. (App. 316-329) The order stated that under 11 U.S.C. § 109(g)(1), willful failure to comply with an order would warrant dismissal of the case with prejudice for 180 days. (App. 324)

On Jun. 5, 2020, Plaintiff filed a statement of damages in the adversary proceeding and served a copy both to Defendant and her attorney.[4] (App. 462-513). On Jun. 18, 2020, Defendant, who still had not complied with the Court's order, filed a motion to dismiss her bankruptcy case. (App. 330.) On Jun. 25, 2020, Defendant filed a lengthy opposition to Plaintiff's statement of damages in the adversary proceeding and a motion for summary judgment in the main bankruptcy case (App. 519-705)

On Jul. 9, 2020, the Court held telephone hearings in both cases. Defendant appeared at a hearing with her attorney Bennie Brooks, who was representing her only in the main bankruptcy case. Defendant insisted that she had not received (and therefore had not read) Plaintiff's statement of damages, which was the subject of the hearing,

> THE COURT: We've got an affidavit of Mr. Brooks laying out what he thinks his damages are. ...Do you think there's anything wrong with his calculation of damages? Is there anything else that you think needs--
> MS. R.O.S.E.B.A.R.: ...I don't even know if I've ever seen what he is speaking of ... And certainly, Mr. Brooks has never sent me anything as far as that is concerned....
> THE COURT: His affidavit lays out a basis for damages, and the question is why shouldn't I award damages as set forth in that

---

[4] The Memo incorrectly states that Plaintiff filed his Statement of Damages on June 11, 2020.

affidavit? And your opposition failed to really wrestle with that question. So, I guess I'm giving you a second opportunity to tell me why I should not award damages as set forth in Mr. David Brooks' affidavit

MS. R.O.S.E.B.A.R.: .... It should go back to D.C. Superior Court due to the fact that it was a D.C. Superior Court case …

THE COURT: But if the case stays here, why shouldn't I award damages as set forth in Mr. David Brooks' affidavit?

MS. R.O.S.E.B.A.R.: …. I'm not even sure what that affidavit is. I have not seen it. I've never been given it.

THE COURT: …  It's obvious you saw his 'statement of damages and request for injunction by reason of default' because that's exactly how your response is titled as to what it is responding to.

(Excerpts from App. 715-720)

The Court dismissed Defendant's bankruptcy case (as Defendant had

requested) but retained jurisdiction of the adversary proceeding so that it

could award a judgment. The Court explained :

> THE COURT: The subject matter jurisdiction is tested as of the date of filing of the complaint. So, when the complaint was removed to this court, there was indeed subject matter jurisdiction. The bankruptcy case is dismissed today. …. The case law permits the court to retain jurisdiction based upon a number of factors. One of those is how far the litigation proceeded. .Here … it's proceeded to the point where we're ready to adjudicate the amount of damages. … Mr. Brooks points out that the Superior Court has not been conducting hearings. And the docket in the Superior Court indicates that there had been very slow progress in permitting Mr. Brooks to get to the point where he could obtain a default judgment. I think that is a factor that weighs in favor of this court retaining jurisdiction. I've spent considerable time reviewing the parties' papers. If this were remanded to the Superior Court with the procedure in place for adjudicating default judgment damages that I've set up, the Superior Court judge would have to go through the same drill that I've gone through. …Erin Rosebar has defended on grounds that have nothing to do with the procedures for entering a default judgment. … She says

that she didn't get an attorney, but ... Wendell Robinson was still
her attorney of Record. ... She decided not to proceed with his
assistance. She has not attempted to obtain an attorney either in
the Superior Court to represent her or in this adversary proceeding
in this court. She has had plenty of time to get an attorney. This
adversary proceeding and the civil action that was the adversary
proceeding before the civil action was removed to this court had
been dragging on for years. And I think it's in the interest of
justice to bring this to an end as far as the damages claim is
concerned. ( App. 726-731)

On Oct. 20, 2020, the Bankruptcy Court issued a Memorandum Decision

re Plaintiff's Request for Default Judgment[5] (the "Teel Decision.") (App.

734-740).

24. On Nov. 3, 2020, Defendant filed a Motion to Reconsider

("Defendant's Motion"), in which she argued lack of effective counsel.

(App. 745-757).

Judge Teel retired and on Apr. 14, 2021, the case was transferred from

Judge Teel to Judge Gunn.

On Mar. 29, 2022, Judge Gunn conducted a hearing, during which she

rejected the arguments in Defendant's Motion but nonetheless appeared to

imply that her goal was to reverse Judge Teel's Decision:

> JUDGE GUNN: I'd like to focus this hearing on just Judge Teel's
> order, ... without prejudice to the motion to go back and try -- ...
> to do the state order. But I think ... to get to there, we have to get
> through Judge Teel's order first. ...we need to address the first

---

[5] Judge Gunn refers to Judge Teel's Decision as "Memorandum Decision Re [sic] Plaintiff's Request for Default
Judgment". Judge Gunn added [sic] because apparently she believes that Judge Teel's use of the Latin word *re*
(meaning about or regarding) is incorrect. Plaintiff sees no error and omits the [sic], which he thinks is disrespectful.

step, which is Judge Teel's October 2020 memorandum
decision.... And then, if that is over, then …we go to the next
issue, which is whether or not there can actually be an overturning
of the default order on the merits. (App. 902)

Judge Gunn did not mention subject matter jurisdiction at this hearing or
at any point during her two years on the case.

On Mar. 29, 2023, , Judge Gunn issued a Memorandum Opinion and
Order Granting Reconsideration (the "Gunn Order"), which did not address
the grounds contained in Defendant's Motion but nonetheless granted the
Motion. Judge Gunn ruled that Judge Teel's judgment was void under Rule
60(b)(4), because in Judge Gunn's opinion, Judge Teel abused his discretion
by retaining jurisdiction of the proceeding after he dismissed the underlying
bankruptcy case. Judge Gunn ruled that the Motion could also be granted
because Judge Teel's Decision did not "address whether the complaint was
sufficient to entitle the Plaintiff to a default judgment for defamation." (App.
1105-1130)

**Summary of Argument**

Judge Gunn was not on the bench when this case was adjudicated and issued her Order declaring Judge Teel's judgment "void" without giving Plaintiff an opportunity to be heard. She apparently filled in the gaps in what she described as a "limited record" with her own assumptions of facts and law, most of which Plaintiff believes were incorrect. Although Judge Teel verbally explained his decision to exercise his discretion to retain jurisdiction for a brief period of time of the adversary proceeding after dismissal of the underlying bankruptcy, the exposition regarding that issue in his written opinion was admittedly concise. However, his actions were not anywhere close to the "clear usurpation of power", which render a judgment void under Rule 60(b)(4), and Judge Gunn erred in ruling otherwise.

**Argument**

**A. Judge Gunn failed to afford Plaintiff due process required by FRBP 9027(d) , FRBP 9014(a) and FRBP 9013.**

1. Rule 60(b)(4) states that "On *motion* and just terms, the court may relieve a party … from a final judgment … for the following reasons:  the judgment is void." Rule 60(b)(4) does not nullify the due process requirements of FRBP 9027(d) ("motion for remand of the removed claim or cause of action shall be governed by Rule 9014"). FRBP 9014(a), ("reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought"); and FRBP 9013 ("request for an order… shall be by written motion, …. (which) shall state with particularity the grounds therefor, and shall set forth the relief or order sought.")

2. Unlike a Notice of Removal, which is simply filed with the clerk, the Court must treat a request for remand as a contested matter and ensure that the party against whom relief is sought receives notice and an opportunity to heard. FRBP 9014(a) and FRBP 9027(d).

3. Judge Gunn ensured that Plaintiff received neither notice nor an opportunity for hearing. Defendant addressed the issue of remand in her post-hearing brief, to which Judge Gunn had explicitly stated Plaintiff could not file a reply.(App. 932 line 14). Plaintiff filed a motion alerting Judge Gunn that he objected to the procedure, which denied him the opportunity to be heard on Defendant's new jurisdictional arguments. (App. 1051). Not only did Judge Gunn

fail to remedy the defect by scheduling a hearing or allowing Plaintiff to submit a responsive pleading, but she delayed ruling on Plaintiff's two-page motion for almost a year and did not deny it until after she had already vacated Judge Teel's Decision, thereby guaranteeing that Plaintiff would have no opportunity to be heard on the issue which decided his case.

4. Judge Gunn's denial of due process occurred within the context of her harsh criticism of Judge Teel, who unlike Judge Gunn, had provided both parties notice and an opportunity to be heard.

## B. Judge Gunn's assumption that there was an open case in Superior Court is incorrect.

The Superior Court dismissed the defamation case almost three years ago. (App. 47). Plaintiff did not attempt to challenge the dismissal because he already had a judgment against Defendant, and he was not interested in pursuing Defendant's husband (who is in prison for ten years and from whom collection of a judgment would be very difficult) or pursuing injunctive relief, since his business was already destroyed so there was nothing left to protect. [6]

---

[6] Even if the case had not been dismissed and Plaintiff was pursuing Defendant and her husband, Judge Gunn's contention that "all claims and all defendants can be adjudicated concurrently (in Superior Court)" would still be wrong, because the case against the husband would be adjudicated by a jury trial, and the case against Defendant would be adjudicated by an *ex parte* hearing. The two cases would involve different sets of issues, because a default was entered against Defendant but not her husband, and default leads to the admission of facts without the necessity of proof. Thus, in this hypothetical scenario, divergent results would not have been unjust.

## C. Dismissal causes Plaintiff extreme prejudice.

The Gunn Order destroys a $652,755.55 judgment for which Plaintiff had waited nine years. (App. 741).

Judge Gunn makes it sound like it would be easy for Plaintiff to return to Superior Court. That assumption is incorrect. The Superior Court dismissed the case on July 24, 2020  (App. 47). Defendant would fiercely litigate any attempt to have it re-opened. As Judge Gunn knows, Plaintiff  is suffering from a progressive neurodegenerative disease and has difficulty with movement, speech and vision (App. 913). His disability gets worse each year. Even if he were able to get the case in Superior Court re-opened over Defendant's objections, and even if he were able to wait out the multiple continuances Defendant would undoubtedly request and receive, and even if he were able to secure an *ex parte* hearing by the end of 2024, he would face the challenge of having to produce witnesses of financial transactions that occurred 11 to 18 years in the past (the income period relevant to the calculation of Plaintiff's damages.)

## D. Judge Gunn's order dishonors the law-of-the-case.

"For judges, the most basic principle of jurisprudence is that we must act alike in all cases of like nature." *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996). The law-of-the-case doctrine serves the judicial system's need to dispose of cases efficiently by discouraging `judge-shopping' and multiple attempts to prevail

on a single question." *Kritsidimas v. Sheskin*, 411 A.2d 370, 371 (D.C.1980). The

law-of-the-case doctrine "posits that when a court decides upon a rule of law, that

decision should continue to govern the same issues in subsequent stages in the

same case." *Arizona v. California,* 460 U.S. 605, 618 (1983). The rule promotes

finality, efficiency and, in the case of a reconsideration of one judge's ruling by a

different judge, <u>comity</u>. "The law-of-the-case creates a presumption against a

court's reexamining its own rulings in the course of a litigation." *Marseilles Hydro*

*Power LLC v. Marseilles Land & Water Co.*, 481 F.3d 1002, 1004 (7th Cir. 2007) .

"The presumption against reopening matters already decided reflects interests in

consistency, finality, and the conservation of judicial resources, among others."

*Minch v. City of Chicago*, 486 F.3d 294, 301 (7th Cir. 2007). For the last 100

years,

> No principle of law is better established than the rule that a District
> Court is bound by the decree as the law-of-the-case…. The rule is
> essential to the proper administration of the law, and to a reasonable
> termination of litigation between the parties in chancery suits. *Mays v.*
> *Burgess*, 152 F.2d 123, 124-25 (D.C. Cir. 1945)

The law-of-the-case doctrine turns "on whether a court previously decided

upon a rule of law. not on whether, or how well, it explained the decision."

*Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 817 (1988).

The doctrines of the law-of-the-case, res judicata, and collateral estoppel (also

known as issue preclusion) apply to determinations of subject matter jurisdiction.

A determination of jurisdiction has preclusive effect in subsequent litigation. *Restatement (Second) of Judgments (1980).* at 104. When the *Restatement* uses the term "subsequent litigation," it includes motions for relief from a final judgment in the court rendering the judgment. See *id.* *1034 cmt. f; ch. 5, introductory note at 140-43; and § 78.

Adopting this same view, the discussion of Federal Rule 60(b)(4) in *11 Wright & Miller, Federal Practice and Procedure*, § 2862 at 201 (1973). Section 2862 at 201 (1973), states: "If defendant has challenged the court's jurisdiction … and this issue has been resolved against him by a final judgment, that judgment is not void, but is res judicata on the issue of jurisdiction."

Determinations of subject matter jurisdiction have preclusive effect. *Carr v. District of Columbia*, 646 F.2d 599, 608 (D.C. Cir. 1980). Also see *Stoll v. Gottlieb.*, 305 U.S. 165,59 S.Ct. 134, 83 L.Ed. 104

> After a Federal court has decided the question of the jurisdiction over the parties as a contested issue, the court in which the plea of res judicata is made has not the power to inquire again into that jurisdictional fact. *(id.)*

Under the law-of-the-case doctrine, courts strongly avoid revisiting rulings already made in the case. Those earlier rulings become the law specific to and binding on the case. An exception can be made when there are newly presented facts or a change in substantive law." *P.P.P. Productions, Inc. v. W L, Inc.,* 418 A.2d 151, 152 (D.C. 1980).

Judge Teel adjudicated and ruled on the issue of subject matter jurisdiction (e.g., App. 525-530, 726-728). There were no newly presented facts or changes in substantive law, which would warrant re-adjudication of the jurisdiction issue. Although Judge Gunn was dissatisfied with the level of exposition in his Decision, Judge Teel's ruling regarding subject matter jurisdiction was the law-of-the-case. He is a distinguished and vastly experienced jurist who had observed the parties in eight cases over 15 years. His rulings are deserving of and entitled to respect, especially given the fact that Judge Gunn was new to the case and had never even heard Defendant testify, except for a two minute presentation which she read a prepared statement.

Judge Gunn asserts that Judge Teel's Decision was void due to lack of subject matter jurisdiction, but she does not assert that her own decisions during the two years she presided over the case were void for the same reason (App. 8-14).

**E. Judge Gunn used an incorrect standard for determining voidness under Rule 60 (b)(4).**

Judge Gunn states that "under Civil Rule 60(b)(4), a court may grant relief from a judgment if the judgment is void, including in a case where the court lacked subject matter jurisdiction."

Judge Gunn assumed that Judge Teel's finding of jurisdiction was wrong and her finding of lack of jurisdiction was right, so she declared that Judge Teel's

judgment was void. But error is not the standard for declaring a judgment void under Rule 60(b)(4).

As the Supreme Court explained in *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269–70, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010), an alleged error in the exercise of jurisdiction does <u>not</u> make a judgment void. See *Lee Mem'l Hosp. v. Becerra*, 10 F.4th 859 (D.C. Cir. 2021)

> As the Supreme Court explained in *United Student Aid Funds, Inc. v. Espinosa*, a motion under Rule 60(b)(4) is not a substitute for a timely appeal, and a judgment is not void ... simply because it is or may have been erroneous. ... Federal courts considering Rule 60(b)(4) motions that assert a judgment is void because of a jurisdictional defect generally have reserved relief only for the exceptional case in which the court that rendered judgment lacked even an "arguable basis" for jurisdiction. 559 U.S. at 271; *see United States v. Boch Oldsmobile, Inc.*; 909 F.2d 657, 661 (1st Cir. 1990); *Nemaizer*, 793 F.2d at 65 (2d Cir.); *Gordon v. Monoson*; , 239 F. App'x 710, 712 n.3 (3d Cir. 2007); *Wendt v. Leonard*, 431 F.3d 410, 414–15 (4th Cir. 2005); *In re G.A.D., Inc* ., 340 F.3d 331, 336 (6th Cir. 2003); *Hunter v. Underwood*; , 362 F.3d 468, 476 (8th Cir. 2004); *DiRaffael v. California Mil. Dep't*; , 593 F. App'x 679, 680 (9th Cir. 2015); *Gschwind v. Cessna Aircraft Co*., 232 F.3d 1342, 1345–46 (10th Cir. 2000); *Matthews, Wilson & Matthews, Inc. v. Cap. City Bank*; , 614 F. App'x 969, 971 (11th Cir. 2015). Under the "arguable basis" standard, a total want of jurisdiction must be distinguished from an error in the exercise of jurisdiction. Only in the former situation could it be said that the court that rendered the contested judgment lacked even an "arguable basis" for jurisdiction. *Lee Mem'l Hosp. v. Becerra*, 10 F.4th 859 (D.C. Cir. 2021) citing *Espinosa*, 559 U.S. at 271.

> Also, *Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 376-77, 60 S.Ct. 317, 319-320, 84 L.Ed. 329 (1940) "An error in interpreting a statutory grant of jurisdiction is not equivalent to acting with total want of jurisdiction and does not render the judgment a complete nullity." *Id*.

Also see *Boch Oldsmobile, Inc.*, 909 F.2d 657, 661 (1st Cir. 1990) (error

in determining jurisdiction does not render a judgment void); and

> *Lubben v. Selective Service System Local Board No. 27,* 453 F.2d
> 645 (1st Cir. 1972) (Total want of jurisdiction must be
> distinguished from an error in the exercise of jurisdiction. A court
> has the power to determine its own jurisdiction, and an error in that
> determination will not render the judgment void. …Nor is the
> judgment void because the precedent on which it relied has been
> reversed for lack of jurisdiction. …To hold otherwise would destroy
> the certainty which allows controversies to be deemed judicially
> concluded.) *id.*

The arguable basis does not need to be articulated to be valid. It may be

implicit in the finding of jurisdiction. As the Court In *Nemaizer v. Baker,*

793 F.2d 58 (2d Cir. 1986) explained:

> We assume without deciding that appellees correctly claim that
> this case was improperly removed and the district court
> improperly exercised its jurisdiction... Nonetheless, the judgment
> entered in federal court was not void. Contrary case law …
> permitting any collateral attack on a prior judgment under Rule
> 60(b)(4) always involve a clear usurpation of power by a district
> court, and not an error of law in determining whether it has
> jurisdiction. Since a court has power to determine its own
> jurisdiction and, in fact, is required to exercise that power *sua
> sponte,* it does not plainly usurp jurisdiction when it merely
> commits an error in the exercise of that power. Rather, a court will
> be deemed to have plainly usurped jurisdiction only when there is
> a "total want of jurisdiction" and no arguable basis on which it
> could have rested a finding that it had jurisdiction. When a district
> court has not explicitly noted why it assumed jurisdiction over a
> suit, appellate courts will independently examine the Record to
> determine whether a reasonable basis existed for the lower court's
> implicit finding that it had jurisdiction… We do not suggest that
> the district court's implicit finding that it had jurisdiction over the
> suit was correct, only that it was reasonable, and therefore

immune from collateral challenge under Rule 60(b)(4) *Id.*
(emphasis added) (internal citations omitted.)

Judge Gunn appears to assert that Judge Teel was required in his written

decision to "conduct a thorough analysis of subject matter jurisdiction in

considering whether to exercise his discretion to retain jurisdiction over the

remaining adversary proceeding," (App. 1120). If this is her assertion, it <u>is</u>

<u>incorrect</u>.

The standard for voidness under Rule 60(b)(4) is not error. The standard

is whether *any* arguable bases existed on which a court could have rested a

finding that it had jurisdiction.

Plaintiff need only identify a single factor for which there was an arguable

basis for retaining jurisdiction to show that Judge Teel's Judgment was not void.

Judge Gunn is not an appellate court and is not empowered to conduct *de novo*

reviews of other judge's decisions simply because she is not satisfied with the other

judge's written analysis of subject matter jurisdiction. It does not matter whether

Judge Gunn believes that Judge Teel adequately "discusse(d) what standard must

be applied" or whether Judge Gunn believes that the standard Judge Teel used was

correct. The correct standard is "Did at least one arguable basis exist on which a

court could have rested a finding that it had jurisdiction?"

> *Gschwind v. Cessna Aircraft Co.,* 232 F.3d 1342, 1346 (10th Cir. 2000)
> (explaining that for a judgment to be void for lack of subject-matter

jurisdiction under Rule 60(b)(4) "there must be no arguable basis on which the court could have rested a finding that it had jurisdiction.").

If the Record supports an "arguable basis" for concluding that subject-matter jurisdiction existed, a final judgment cannot be attacked as void. *Vega v. Trinity Realty Corp.*, 2021 WL 738693, at *3 (S.D.N.Y. Feb. 24, 2021); *Baella-Silva v. Hulsey*, 454 F.3d 5, 9-10 (1st Cir. 2006); *Fafel v. Dipaola*, 399 F.3d 403, 411 (1st Cir. 2005).

**F. Judge Teel's judgment was not void because there were at least nine arguable bases for retaining jurisdiction of the adversary proceeding after the main bankruptcy case had been dismissed.**

**Basis 1. Material delay was associated with remand due to closure of Superior Court.**

Judge Gunn admits that when considering whether to retain subject matter jurisdiction, the Court should also focus on "whether a material delay would result if the Court declined to retain subject matter jurisdiction." (App. 1121 line 2 ). This was exactly what Judge Teel did.

Judge Gunn asserts that there was "no evidence in the record" regarding "further delay" that would be associated with a remand. Judge Gunn is mistaken.

> DAVID BROOKS: Well, the Record in Superior Court since the case was returned by the Court of Appeals which is about exactly one year ago show that it was not timely adjudicated, both a combination of their backlog and requests for stays and continuances by the defendant …The Superior Court is not even open now. They they're not having telephonic hearings. So, it would be six months before they even have a status hearing on it. And I assume what the debtor told them was that Benny Brooks is representing her. She's going to go back like she did with Wendell Robinson and say, oh, now I need more time to look for an attorney

> and it's a new judge who will be unfamiliar with the history, who
> will probably grant that request. And this is something that a
> default was entered I think five years ago. (App. 710-711.)

> THE COURT: The docket in the Superior Court indicates that there
> had been very slow progress in permitting Mr. Brooks to get to the
> point where he could obtain a default judgment. (App. 728)

In a footnote, Judge Gunn grudgingly admits that "Judge Teel

alluded to the perceived speed of this Court's adaptation to COVID

protocols compared with the Superior Court as a major factor in

retaining jurisdiction" but Judge Gunn discredits the factor because

"nothing in the Notice of Removal indicates that the COVID-19

pandemic spurred Plaintiff to seek removal."

Judge Gunn seems determined not to allow a single factor that

might interfere with her goal of vacating Judge Teel's Decision. Judge

Gunn's own authority states that the court should focus on "whether a

material delay would result if the Court declined to retain subject

matter jurisdiction "The fact is that at the time of removal, the

Bankruptcy Court was holding hearings and the Superior Court was not

holding hearings. (App. 1132.) This was not a *perceived* difference. It

was an actual difference. Whether Plaintiff stated in his Notice that the

COVID-19 pandemic "spurred" him to seek removal is completely

irrelevant. 28 U.S.C. §1452 does not instruct parties removing claims to describe the factors that "spurred" them.

Case law supports Judge Teel's finding of continued jurisdiction because remand would result in material delay. See *In re Oxley Dev. Co., L.L.C.*, 493 B.R. 275, 287 (Bankr. N.D. Ga. 2013) (dismissal would cause further unnecessary delays); *In re Dawson,* 411 B.R. 1 (Bankr. D.D.C. 2008) (re-adjudication of this dispute in another forum would … delay resolution of this adversary proceeding); *In re Smith,* 866 F.2d 576 (3d Cir. 1989) (unfair to compel party to bear the … delay of a retrial in the state court); *Chris Di Ferrante v. Donald Young,* Adversary No. 06-03195 Bankr.S.D. Tex, (2007) ("dismissal would further delay Plaintiff's day in court");

**Basis 2. Short proximity of the case to resolution.**

When Judge Teel conducted the hearing on Jul. 9, 2020, the case had proceeded to the point where the Court was ready to adjudicate damages. The short proximity to resolution provided a basis for continued jurisdiction. According to case law, when an adversary case is close to finishing because a default has been entered against the defendant and the underlying bankruptcy case is dismissed, the short proximity to resolution is an arguable basis for continued jurisdiction.

The Bankruptcy Court for the Southern District of Texas had entered a

default against the debtor/defendant in *Chris Di Ferrante v. Donald Young,*

Adversary No. 06-03195 Bankr.S.D. Tex, (2007). The court wrote:

> When evaluating the factors, circuit courts have placed particular
> weight on the adversary proceeding's proximity to final resolution
> within the bankruptcy court. … As in *In re Porges*, 44 F.3d 159 (2d
> Cir. 1995) at 163, Plaintiff's adversary proceeding has neared its
> resolution. Consistent with the Court's April 18th sanctions order,
> all factual allegations have been deemed in Plaintiff's favor. The
> Court need only make final conclusions of law and enter a
> judgment. …To dismiss the action and force the parties to relitigate
> now would be grossly unfair. *Di Ferrante,* Bankr.S.D.
> Tex.(emphasis added)

A default was also entered against the defendant in *Rodriguez v.*

*Volpentesta (In re Volpentesta)*, 187 B.R. 261, 270 (Bankr. N.D. Ill. 1995).

The Bankruptcy Court for the Northern District of Illinois found that:

> Due to the Defendant's default …, this adversary case is almost
> finished and judicial economy argues for this Court exercising its
> discretion in favor of retaining jurisdiction over it. *Id*

Default also entered and continued jurisdiction found in *Mathews v.*

*Ellison* (In re Ellison), C/A No. 19-05203-jw, Adv. Pro. No. 20-80001-jw, slip

op. (Bankr. D.S.C. Apr 23, 2020)

Judge Gunn notes that the defamation claim has been pending in

Bankruptcy Court for "*only*" four months before the underlying bankruptcy

case was dismissed. She asserts that "one would be hard pressed to create a

definition that more specifically sets forth the type of case over which a bankruptcy court should not retain jurisdiction."

The *Di Ferrante* and *Rodriguez* courts do not agree with Judge Gunn. In *Chris Di Ferrante v. Donald Young,* Adversary No. 06-03195 Bankr.S.D. Tex, (2007), the adversary case had been pending for one month when the bankruptcy case was dismissed. In *Rodriguez*, 187 B.R. 261, the adversary case had been pending for five months when the bankruptcy case was dismissed. Both courts retained jurisdiction of the adversary case. The relevant question is not how long the case has been pending in bankruptcy court. The question is how close the case is to finishing. Because of Judge Teel, the case finished Oct. 20, 2020. If Judge Gunn's Order is allowed to stand, the case will continue at least through 2024 and probably longer.

Judge Gunn claims that under Judge Teel there was "no discussion of the factors to be considered nor whether such facts are sufficient under any test for this Court to retain subject matter jurisdiction over the Defamation Claim." (App.1114). Judge Gunn is mistaken. Judge Teel discussed several factors, including proximity to resolution. (App. 727, 728)

Judge Gunn admits the relevance of this factor. "In considering whether to retain subject matter jurisdiction, the analysis focuses on the status of the

litigation" (App. 1121 line 13 – 1122 line 1.) Because Judge Teel was close to

final resolution, there was an arguable basis for retaining jurisdiction.

**Basis 3. Authorities state that courts should retain jurisdiction of adversary proceedings in bankruptcy cases in which the defendant has procured dismissal.**

In *Rodriguez*, 187 B.R. 261, the Bankruptcy Court for the

Northern District of Illinois explained the danger that would be created

if the debtor in an adversary proceeding could bounce the proceeding

out of federal court by procuring the dismissal of the underlying

bankruptcy proceeding, especially when the bankruptcy case had been

dismissed for bad faith, as was the case for Defendant Rosebar.(App.

305)

> Ordinarily, when a case is within federal jurisdiction when filed, it remains there even if subsequent events eliminate the original basis for federal jurisdiction. Otherwise, a litigant who didn't like the way his case was going could, even on the eve of judgment, engineer its dismissal, allowing him to start over in a different court. Exactly the same danger would be created if the debtor in an adversary proceeding could bounce the proceeding out of federal court by procuring the dismissal of the underlying bankruptcy proceeding. See *Chapman v. Currie Motors, Inc.*, 65 F.3d 78, 81 (7th Cir. 1995)…and *In r Statistical Tabulating Corp. Inc.*, 60 F.3d 1286, 76 A.F.T.R.2d (P-H) 5863 (7th Cir. 1995)…(A) debtor/defendant should not have unfettered discretion to engineer the dismissal of an adversary proceeding by procuring … the dismissal of his underlying bankruptcy case. … Since the underlying bankruptcy. case was dismissed for bad faith filing; it would be unjust to permit the defendant to

take advantage of the dismissal to the detriment of the
Plaintiff. *Rodriguez*, 187 B.R. 261

Defendant Rosebar procured the dismissal of her bankruptcy case
both by filing a motion to dismiss (App. 330) and by disobeying an
order after receiving explicit notice that disobedience would result in
dismissal. (App. 321) She expected her dismissal of her bankruptcy
case to result in the Defamation claim going back to Superior Court
(App. 720 line 24.)

Authorities state that courts should retain jurisdiction of adversary
proceedings in bankruptcy cases in which the defendant has directly or
indirectly procured dismissal. Remanding the case was unjust because
it permitted Defendant to take advantage of the dismissal to the
detriment of the Plaintiff ." *id.*

**Basis 4. Avoidance of wasted time and duplication of effort.**

Judge Teel stated that he had spent considerable time on the
adjudication of damages, which would be wasted if the case were to be
remanded to the Superior Court.

Judge Gunn cites the page count of a subset of filings and quibbles
with Judge Teel's assessment of the time he spent reviewing them. Such
accusations against an honorable jurist are petty, inappropriate, and

disrespectful. Federal judges do not punch a time clock or get paid by the page. They are entitled to the presumption of truth.

Judge Gunn also asserts that the amount of time spent by the Court "is immaterial to a determination on whether the Court has subject matter jurisdiction." (App. 1125). But in the same Order, Judge Gunn asserts that "In considering whether to retain subject matter jurisdiction, the analysis focuses on … the time expended by the court." (App. 1120-1121)

The goal of not wasting time and not duplicating effort are in fact arguable bases for continuing jurisdiction. See *In re Oxley Dev. Co., L.L.C.*, 493 B.R. 275, 287 (Bankr. N.D. Ga. 2013):

> (R)etaining this adversary proceeding would be more efficient on the whole than forcing a state or district court to start from scratch. All of the time and effort this Court has expended would be wasted, and redundant effort would be required from any court that would be forced to start all over again.… Forcing (plaintiff) to …start all over at this point would be unfair and incredibly inconvenient… To decline jurisdiction at this point would waste the resources the parties have already invested in this case and would be unfair and inconvenient to them. *Id*);

Also see *In re Smith,* 866 F.2d 576 (3d Cir. 1989)

> To have remanded at that stage to the state court would have served no purpose and would have wasted unnecessarily the resources and energies already invested by the parties and the court) *Id*.;

and *Rodriguez*, 187 B.R. 261 (the substantial time, energy, and effort

Plaintiff spent on this case should not go to waste) and *Chris Di*

*Ferrante v. Donald Young,* Adversary No. 06-03195 Bankr.S.D. Tex,

(2007)

> When all factual allegations have been deemed in Plaintiff's favor and the court need only make final conclusions of law and enter a judgment, the adversary proceeding is not one where retention of jurisdiction will result in a lengthy trial that will duplicate work already completed in a state court. The opposite is true. Retention will resolve a dispute that has lasted years. Dismissal would force Plaintiff to relitigate his claims in state court. The Court has become well-acquainted with the parties and issues presented by the action. *Id.*

**Basis 5. Judge Teel had experience with the parties, was already familiar with the subject matter, and had expertise in valuing businesses**

In the last 15 years, Judge Teel adjudicated five bankruptcy cases

filed by Defendant and/or her husband along with several adversary

cases. Judge Teel observed hours of testimony from the parties and

reviewed hundreds of pages of documents. Judge Teel was even

familiar with the allegations in the reviews. (App. 205-210).

Judge Teel has expertise valuing businesses. In *In Re: Sam Alberts,*

*Trustee, D.C.H.C. Liquidating*, No. 1:2012cv00564, (D.D.C. 2013), the

District Court commended Judge Teel's abilities and affirmed his valuation:

> This Court commends Judge Teel for undertaking what had to have been incredibly time-consuming and detail-oriented work… Judge Teel's legal conclusions regarding what makes an earnings projection

reliable and reasonable vis-à-vis calculating the value of a business enterprise under a discounted cash flow analysis are affirmed. *Id.*

The new judge in Superior Court, on the other hand was a generalist who had no experience with the parties, was not familiar with the facts of the case, and had no special expertise in business valuation. At the initial status hearing, the Superior Court judge mistook Plaintiff for the Defendant's husband.[7]

Experience with the parties, knowledge of the case's subject matter, and expertise in calculating business damages were arguable bases for retaining jurisdiction

**Basis 6. Judicial economy. Appeals are not judicially economic**

Judge Gunn asserts that "the concept of judicial economy strives to ensure that disputes related to a single dispute should be resolved in the original forum." In support she cites three venue-specific authorities, which do not apply to claims removed to Bankruptcy Court via U.S.C. §1452.[8] Bankruptcy Courts should not and do not remand every case before them that involves or relates to a judgment issued by another court,

---

[7] Plaintiff does not imply that Judge Saddler was deficient, only that she did not have as much experience with the parties or the subject matter as Judge Teel.

[8] Morrow, for example, is a 1969 case concerning the power of the District of Columbia Court of Appeals to restrain the District of Columbia Court of General Sessions from issuing certain orders, and the jurisdiction of the Court of General Sessions to issue orders prohibiting the dissemination of police records regarding the arrests of persons tried in the Criminal Division of that court.

Obviously, vacating a judgment so that the same matter can be re-adjudicated by a different judge who has no experience with the parties and no knowledge of the case is not judicially economic. Judge Gunn granted Defendant the equivalent of a *de novo* appeal, which by definition involves more judicial resources, not less.

Like *houses* and *cars*, the most economical *judgment* is not a new one. It is the one you already have. Or in Plaintiff's case, the one he had before Judge Gunn revoked it.

The two cases cited by Judge Gunn, *Burns v. Fannie Mae* No. CC-17-1082, 2018 Bankr. and *Pierce v. Deutsche Bank Nat'l Trust (In re Pierce),* No. 19-05271, 2019 Bankr., both illustrate the principle that it is more economic to adjudicate a matter once then to adjudicate it twice, and that if one court is close to finishing an adjudication, a second adjudication of the same matter should not be commenced.

Judge Teel completed his adjudication of damages in the present case, almost three years ago. Throwing away Judge Teel's work so that it can be re-performed in a different court is not judicial economy. It is the *opposite* of judicial economy.

When a bankruptcy court has already started adjudicating an issue and is close to finishing, judicial economy is an arguable basis for continuing

jurisdiction, not dismissing jurisdiction. See *In re Smith,* 866 F.2d 576 (3d

Cir.1989); *In re Pocklington,* 21 B.R. 199 (Bankr.S.D.Cal.1982). Also see

*In Re Roma Group, Inc.,* 137 B.R. 148 (Bankr. S.D.N.Y. 1992)

> It would be a waste of judicial time to direct the parties to start all
> over again in state court. Moreover, it would be unfair to compel
> … Michael Anthony, to incur additional legal fees and expenses
> for a new state court action without any fault on its part. …11
> U.S.C. § 349 empowers the court, in the exercise of its discretion,
> to retain jurisdiction over the debtors' adversary proceedings …in
> the interests of judicial economy, fairness and convenience to the
> litigants.) *Id.*;

and *In re Stardust Inn, Inc.,* 70 B.R. 888 (Bankr.E.D.Pa.1987)

> discretion best exercised by retaining jurisdiction…(when) the
> matter has already been fully tried with all parties simply
> awaiting the decision of this court. This is significant since
> dismissal of the action would require that the matter be refiled
> and relitigated in state court. *Id.*

**Basis 7. Fairness and convenience. Judge Gunn's grievances are neither
supported by the Record nor relevant to the issue of fairness as defined
by her authority.**

Judge Gunn states that

> when evaluating whether to retain jurisdiction of an adversary case
> after dismissal of the underlying bankruptcy, courts look at whether
> re-adjudication of a dispute in another forum would inevitably
> result in unfairness to the litigants. *Huff v. 21ˢᵗ Mortg. Corp. (In re
> Huff)*, Nos. 2:17-bk-20290, 2:17-ap-2014, 2021 Bankr. LEXIS
> 2668, at *17 (Bankr. S.D. W. Va. Sep. 28, 2021).

Applying this authority to the current case means that Judge Teel should have looked at whether re-adjudication of the amount of Plaintiff's damages in Superior Court would inevitably result in unfairness to the litigants.

Judge Teel did precisely that. He concluded that remanding the case to the Superior Court would have inevitably resulted in unfairness to Plaintiff because the Superior Court was not conducting hearings, and remand would have resulted in a material delay in receiving his judgment.

Judge Gunn harshly criticizes Judge Teel's alleged unfairness, but Judge Gunn does not assert any reasons why remanding the case to the Superior Court would or would not inevitably result in unfairness. Judge Gunn's one-off grievances might be appropriately for an appeal, but according to *Huff v. 21ˢᵗ Mortg. Corp, id.,* they do <u>not</u> provide a basis under for declaring Judge Teel's Judgment void.

Judge Gunn asserts that "Plaintiff's voluntary choice to change forums despite the ability to continue in the original forum weighs in favor of fairness in remanding this case to the Superior Court."  Judge Gunn is apparently attacking Plaintiff for exercising his right of removal under 28 U.S.C. § 1452. She does not assert that or explain how removing a claim to bankruptcy court inevitably results in unfairness.

Plaintiff would have been fine proceeding with the Jan. 10, 2020 hearing in Superior Court. But he could not, because Defendant sought bankruptcy protection (for the third time). Given Defendant's action, Plaintiff's only choices were either  (a) to honor Defendant's request and remove his claim to Bankruptcy Court, or (b) to deny Defendant's request and attempt to litigate two different cases in Bankruptcy Court and Superior Court at the same time. Judge Gunn does not explain why removing a claim to bankruptcy court inevitably results in unfairness to the litigants.

Judge Gunn makes numerous other allegations of unfairness, which are unsupported by the Record and irrelevant to the issue of fairness as defined by her authority. For example, Judge Gunn asserts that "Judge Teel did not permit the Defendant to cross-examine the Plaintiff on his filing or to challenge the admissibility of the documents attached thereto related to damages."  There is no evidence in the Record that Judge Teel "did not permit Defendant to cross-examine Plaintiff on his filing." The reason why Defendant did not ask any questions regarding the filing was that she stated she had not read it. (App. 715-720). This is not surprising. She also testified that she had not read the complaint. (App. 66)

The outcome of the adjudication was not the result of a conspiracy of unfairness, nor was it an inevitable result of "this Court retaining subject

matter jurisdiction." The outcome was the result of Defendant appearing at an important hearing without an attorney and without having read the filing that was the subject of the hearing and trying to blame her lack of preparedness on Plaintiff by falsely accusing him of not serving her. (App. 716 line 13). It is not "unfair" to be held accountable for one's own actions. By denying that she had received the filing (when she obviously had), Defendant painted herself in a box.

Rule 60(b) cannot be employed simply to rescue a litigant from strategic choices that later turn out to be improvident", *Smalls v. United States*, 471 F.3d 186, 191 (D.C. Cir. 2006). Also see *Tennille v. Tennille*, 791 A.2d 79, 83 (D.C. 2002), (defendant willfully disregarded the court's processes by making a free, calculated, and deliberate choice to ignore the complaint); *In Butler v. United States*, 268 A.2d 862, 864 (D.C. 1970) (a litigant presenting a willful or negligent disregard of the court's process does not qualify for relief).

Although she does not explain how it relates to subject matter jurisdiction, Judge Gunn accuses Plaintiff of "choosing only to incorporate a few select pleadings" in his Notice of Removal of Claim Against Erin Rosebar and Motion to Enlarge Time to File Record. This allegation is false. Unlike Defendant, who had access to filings because she was represented by counsel

when the pleadings were filed[9], Plaintiff appeared pro se, so there was no one

he could go to for copies. Plaintiff provided all of the documents that were

available to him at the time, which were the key documents in the case, A

comparison of the documents Plaintiff filed with his Notice of Removal and

Motion to Enlarge Time to File Record (App. 363-437) and the larger group

of documents filed with Plaintiff's Supplementation of Record (E.C.F. Doc

64) reveals no bias. Even if the allegation were true, Judge Gunn does not

explain how a delay in access to documents (none of which regard damages)

would have any bearing on continuing jurisdiction.

An alleged defect in removal procedure is not a basis for dismissal or

remand. *In re Talon Holdings, Inc.*, 221 B.R. 214 (Bankr. N.D. Ill. 1998).

Unlike Plaintiff, Defendant did not request leave of court when she deviated

from the procedures in Rule 9027.

Fairness and convenience are arguable bases for retention of jurisdiction.

See *In re Oxley Dev. Co., L.L.C.*, 493 B.R. 275, 287 (Bankr. N.D. Ga. 2013)

> Retaining this adversary proceeding is the most fair and
> convenient result for the parties…. Forcing (plaintiff) to
> …start all over at this point would be unfair and incredibly
> inconvenient… To decline jurisdiction at this point would
> waste the resources the parties have already invested in this
> case and would be unfair and inconvenient to them.

---

[9] Restatement (Third) of The Law Governing Lawyers (2000)(On request, a lawyer must allow a client or former client to inspect and copy any document possessed by the lawyer relating to the representation, unless substantial grounds exist to refuse.

Also see *Chris Di Ferrante v. Donald Young,* Adversary No. 06-03195 Bankr.S.D. Tex, (2007) (dismissing the action and forcing the parties to relitigate would be grossly unfair.) Declining jurisdiction gives Defendant an unwarranted second bite of the apple. See *In re Dawson,* United States Bankruptcy Court, D. Columbia, 411 B.R. 1 (Bankr. D.D.C. 2008) ("re-adjudication of this dispute in another forum would ... provide the parties with an unwarranted second bite at the apple.")

Judge Gunn wrongly assumed that neutral factors weigh against retention of jurisdiction. For example, Judge Gunn found that the cause of action and the relief sought did not require the Bankruptcy Court's expertise. Therefore, she concluded that both factors "weigh against the Court retaining subject matter jurisdiction...Therefore, the Court finds that each of the four identified factors weigh against the Court exercising its discretion and retaining subject matter jurisdiction." (App.1127-1128)

But the case law makes clear that the absence of a factor is a neutral finding that does not weigh for or against retaining jurisdiction. See *In re Oxley Dev. Co., L.L.C.*, 493 B.R. 275, 287 (Bankr. N.D. Ga. 2013) (The degree of difficulty of the legal issues in this adversary proceeding poses no persuasive rationale for dismissing it.") and *Rodriguez v. Volpentesta (In re*

*Volpentesta)*, 187 B.R. 261, 270 (Bankr. N.D. Ill. 1995) ("The causes of action brought by the Plaintiff are not difficult for the bankruptcy court ")

**Basis 8. Defendant consented to jurisdiction of Bankruptcy Court.**

Defendant argued in open court that the "Bankruptcy Court has subject matter jurisdiction and it would be a waste of time and resources and not judicious to go forward in Superior Court." (App. 304-305) The Bankruptcy Court adjudicated the claim as Defendant requested, but Defendant did not like the outcome. That sometimes happens in litigation. But a defendant may not consent to removal of a case and then subsequently withdraw that consent, making the removal ineffective *nunc pro tunc*.

> Such a rule would (be) susceptible to abuse: for example, a defendant could join in removal, only to withdraw that joinder following assignment to a particular judge in the federal district court whom that defendant found particularly objectionable. *New England Wood Pellet, L.L.C. v. New England Pellet, L.L.C.*, 419 B.R. 133, 141 (D.N.H. 2009)

Even in cases where the nature of the legal issues may favor trial in state court, that factor by itself is not dispositive. In *In re Morris*, 950 F.2d 1531 (11th Cir. 1992), ("We are not persuaded that this factor is so overwhelming that it outweighs the others.").

Striking the judgment three years after it was issued in order to give Defendant a do-over in state court is the equivalent of "retroactive forum shopping", because it allows her to abandon her previous choice, the Bankruptcy Court, after she learned of the judgment amount and to try for a "better deal" in a different venue

**Basis 9. Judicial discretion**

There is a federal interest in maintaining the integrity of the bankruptcy courts and preventing the use of the bankruptcy process to hinder and delay creditors who have been harmed by a debtor.

*Rodriguez v. Volpentesta (In re Volpentesta)*, 187 B.R. 261, 270 (Bankr. N.D. Ill. 1995)

Defendant's conduct in Superior Court was so egregious that the Court issued the highest sanction possible, the entry of default. Defendant's conduct in Bankruptcy Court showed a continued disregard for court procedures. Defendant filed two bankruptcies in two years, at least one of which the Court determined to be in bad faith. (App. 305) She disobeyed court orders and was found to be in contempt of court. (App. 321-329). In her bankruptcy schedules she reported no bank accounts and claimed to have only $125 in cash (App. 261), but she later admitted that she used her father's bank account to hold $38,000 (App. 290-295, 1138). On her bankruptcy schedule, she

reported 2019 income of $22,500 but later admitted that she made two or three times that amount (App, 279, 297-302, 1132). She reported spending thousands of dollars per year in parking tickets but claimed not to own a car (App. 1138). She submitted several affidavits containing provably false statements. (e.g. App. 538). Despite the fact that they were determined to be false by every court and every agency that reviewed them, and despite the judgment entered against her, Defendant continues to make the same accusations against Plaintiff that she made in the reviews. The Court should not exercise judicial discretion in her favor.

**E. The default judgment issued by Judge Teel was not defective.**

Judge Gunn asserts that the default judgment issued by Judge Teel was defective because it did not "address whether the complaint and/or the Plaintiff's affidavit was sufficient to entitle the Plaintiff to a default judgment for defamation." (App. 1132). Judge Gunn explained that

> In the District of Columbia, defamation, even defamation per se, have a number of elements that must be proven…The entry of a default … does not relieve the moving party from essentially proving up their case. … I believe the law is you have to have a finding that there is an entitlement to relief. (App. 928).

**1. Relief not available for grounds not contained in Defendant's Motion**

The matter was not properly before Judge Dunn. As previously stated, FRBP 9013 requires that a "request for an order… shall be by written motion, …. (which)

shall state with particularity the grounds therefor.") Defendant did not state such grounds in her Motion. (App. 745). In fact, Defendant, like Plaintiff, had reached the opposite conclusion, namely that "after entry of a default, … a plaintiff need not establish each element of his claim to recover a money judgment."  (App. 957)

**2. Relief not available under Rule 60 (b)(1)**

Even if Defendant's Motion contained these grounds and even if the statement were correct, relief would not  be available under Rule 60(b)(1), because unlike a motion based on Rule 60 (b)(4), which Defendant states can be made at any time, a motion based on Rule 60(b)(1) has very limited application.

The cases are quite clear. Rule 60(b) is not a vehicle for presenting theories or arguments that could have been raised previously. *West v. Holder*, 309 F.R.D. 54, 56 (D.D.C. 2015); *Douglas v. District of Columbia Housing Auth.*, 306 F.R.D. 1, 5 (D.D.C. 2014); *Walsh v. Hagee*, 10 F. Supp. 3d 15, 19 (D.D.C. 2013); Also see *Taitz v. Obama*, 754 F. Supp. 2d 57, 61 (D.D.C. 2010)(Plaintiff cannot use Rule 60(b) motion to raise legal arguments that were available to it before the judgment was issued); *Munoz v. Board of Trustees of Univ. of Dist. of Columbia*, 730 F. Supp. 2d 62, 69 n.1 (D.D.C. 2010) ("Plaintiff cannot use a Rule 60(b)(1) motion to raise a new theory or argument); *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980)(a party that … has not presented known facts

helpful to its cause when it had the chance cannot ordinarily avail itself on rule

60(b) after an adverse judgment has been handed down.)

### 3. Judge Gunn's understanding of the decision of the Court of Appeals is clear error.

> JUDGE GUNN: Your appeal from the Court of Appeals came back saying
> that while you had default, you needed to prove up the elements to obtain
> your default judgment, which is different than the calculation of
> damages… The entry of a default … does not relieve the moving party
> from essentially proving up their case. … And in some ways, this is the
> exact reason why Ms. Rosebar's dismissal was overturned by the Court of
> Appeals (App. 914).

Judge Gunn is mistaken. The decision of the Court of Appeals was that "there

is insufficient evidence to establish that the parties had the requisite meeting of the

minds to create a valid, enforceable settlement agreement." (App. 985).

### 4. Judge Gunn's assumption regarding the Superior Court's denial of Plaintiff's motion for summary judgment is clear error.

Judge Gunn stated:

> both sides were denied summary judgment. So I can only infer, not
> having the order denying your motion for summary judgment, that there
> was some element that wasn't sufficiently pled, or there was some
> element or factual issue that wasn't sufficiently set forth in the
> complaint.

Judge Gunn is mistaken. The Superior Court denied Plaintiff's motion for

summary judgment "because there is a material factual dispute".(App. 1069)

**5. Judge Gunn's assertion that a party requesting a default judgment has a burden to "prove up the elements in their case" was explicitly rejected by the Court of Appeals.**

Judge Gunn asserts that

> In the District of Columbia, defamation, even defamation per se, have a number of elements that must be proven...The entry of a default ... does not relieve the moving party from essentially proving up their case. ...  I believe the law is you have to have a finding that there is an entitlement to relief; there is an entitlement to judgment before we can establish a judgment order for a monetary amount. (App. 928)

These assertions are uncomfortably similar to the conclusions, which the Court

of Appeals deemed an error of law and abuse of discretion in multiple cases. :

*Sivaraman v. Guizzetti & Assocs.*, 228 A.3d 1066 (D.C. 2020)

> After the trial court entered a default in Mr. Sivaraman's favor, it had no occasion to revisit the merits of his retaliation claim and instead should have fashioned appropriate relief while treating the claim as meritorious.

>  ...Upon the trial court's entry of the default, (defendants) were deemed to have admitted to such retaliation, as alleged in (the) complaint.;. All that was left for the trial court to do was determine the extent of the damages sustained by Mr. Sivaraman as the result of his termination and then craft an appropriate award.  ...

> Instead of confining itself to that task, the trial court repeatedly expressed skepticism about the merits of Mr. Sivaraman's retaliation claim as animating its non-award. It reasoned, "I do not think that it is appropriate to award back pay under these circumstances because ... although we are in a default situation, I don't give a lot of credence to the retaliation claim....

> In *Lockhart v. Cade* , 728 A.2d 65, 68–69 (D.C. 1999), we reversed a trial court's denial of damages under similar circumstances, where a default was entered in the plaintiff's favor yet the trial court issued no award because of the plaintiff's failure to "produce sufficient evidence" to "prove the substance of the complaint.". Finding reversible error, we held that the judge should have been confined to proof of damages only and remanded

the case for reconsideration of the damages award. We reach the same result here.

*Sivaraman v. Guizzetti & Assocs.*, 228 A.3d 1066 (D.C. 2020).

and

<u>*Lockhart v. Cade*</u> , 728 A.2d 65, 68–69 (D.C. 1999)

**The Ex Parte Hearing.** At the *ex parte* hearing, Mr. Lockhart … submitted his own affidavit to show his pecuniary losses,… At the close of the hearing, the (trial) court said to Mr. Lockhart's counsel: "…Since Ms. Cade filed an answer to the complaint, the fact that a default has been entered doesn't exclude the requirement that you must prove the substance of the complaint, and more than damages. I find that you have not produced sufficient evidence to do anything like that, and the request for damages and default for malpractice is denied."

**The Effect of the Default.** In a large majority of jurisdictions, including the District of Columbia, the entry of a default operates as an admission by the defaulting party that there are no issues of liability, but leaves the issue of damages unresolved until entry of judgment … 46 *Am.Jur.2d Judgments* § 266. at 579; *see* B. Finberg, Annotation, *Necessity of Taking Proof as to Liability against Defaulting Party,* 8 A.L.R.3D 1070, 1073 (1966). Unless the default order provides otherwise, proof of liability thus becomes unnecessary. *See … Taylor v. Johnson,* 262 A.2d 803, 804 (D.C. 1970) (in child support case, the effect of the entry of default is the admission of the truth of well-pleaded allegations in the complaint; *ex parte* proof is limited to the amount of support to be awarded); *Maryland ex rel. John F. Casey Co. v. Travelers Indemnity Co.,* 197 A.2d 265, 266 (D.C.1964) (entry of default establishes liability without further proof of right to recover); *Ramey v. Hewitt,* 188 A.2d 350, 351 (D.C.1963) (entry of default constitutes an admission by defendant of plaintiff's right to recover); *Anderson v. Gallman,* 99 A.2d 560, 561 (D.C.1953) (entry of default establishes liability, and *ex parte* proof should be limited to the amount of damages); *accord, e.g., United States v. DiMucci,* 879 F.2d 1488, 1497 (7th Cir.1989); *Geddes v. United Financial Group,* 559 F.2d 557, 560 (9th Cir.1977); *Trans World Airlines, Inc. v. Hughes,* 449 F.2d 51, 70 (2d Cir.1971), *rev'd on other grounds,* 409 U.S. 363, 93 S. Ct. 647, 34 L. Ed. 2d 577 (1973). Thus, the only issue remaining before the trial court in this

case was the extent of the damages Mr. Lockhart sustained as a result of Ms. Cade's legal malpractice.…

**We therefore hold**, …that the entry of the default against Ms. Cade relieved Mr. Lockhart of any further obligation to prove liability, and that the *ex parte* hearing should have been confined to proof of damages only. *Lockhart v. Cade* , 728 A.2d 65, 68–69 (D.C. 1999)

.

**6. The cases cited by Judge Gunn do not support her assertion that Judge Teel "*errantly* presumed an immediate right to a default judgment."**

None of the authorities cited by Judge Gunn hold that a default judgment is legally defective  unless it includes a finding that there is an entitlement to relief. Nor do any of the cases provide any authority for the action taken by Judge Gunn – striking another judge's judgment.

*Oliver v. Mustafa*, 929 A.2d 873 (D.C. 2007) involves a default entered for failure to answer the complaint. No determination was made that the non-defaulting party was entitled to default judgment on the causes of action pled, as Judge Gunn asserts was necessary. Rather, the case was "set down for a jury trial before Judge Maurice Ross on the issue of damages alone, *liability having been established by the default*". After the jury awarded damages, Ms. Oliver appealed. The Court of Appeals affirmed. The decision of the Court of Appeals in *Oliver v. Mustafa Id.* does not support Judge Gunn's assertion that a default judgment is defective unless preceded by a determination that the non-defaulting party is entitled to the judgment. But it does imply, and Plaintiff apologizes for originally missing this point, that when a default is entered based on a party's failure to

46

respond, the defaulting party can argue that there was insufficient basis in the pleadings for the judgment entered. However, in such a case, the burden is on the defaulting party, not the non-defaulting party, to show that the causes of action in the complaint were not well pleaded. ("Ms. Oliver has not met her burden of showing that the allegations in this complaint were not well-pleaded". *Id.*) There is no allegation in the present case that the complaint was not well pleaded. Plaintiff's pleading of defamation has been reviewed by two Superior Court judges, three Court of Appeal judges, and two Bankruptcy judges, and none have claimed it defective.

Judge Gunn also cites *Int'l Painters & Allied Trades Indus. Pension Fund v. K & J Erectors L.L.C.*, No. 04-1236 (R.M.U.), 2006 U.S. Dist. LEXIS 16994, at *3–5 (D.D.C. Mar. 27, 2006). This case involves a default entered by the clerk for a party's failure to respond to a complaint filed in District Court. It does not involve a default entered as a discovery sanction by the Superior Court. Although Judge Urbina mentions that the complaint in *Int'l Painters* set forth a *prima facie* case for relief, he does not state that a judgment without such explicit finding is defective.

Judge Gunn also cites *Flynn v. Masonry*, 233 F.R.D. 176, 177 (D.D.C. 2005). This case is also off point. It involves a default entered by the clerk for a party's failure to respond to a complaint filed in District Court. It does not involve a default entered as a discovery sanction in the Superior Court. To whatever extent

*Flynn* is relevant, the authority contradicts Judge Gunn's assertion, because the Flynn court awarded the plaintiff in that case a default judgment for the full amount of the damages stated in the plaintiff's affidavits without making an explicit finding on the sufficiency of the complaint or entitlement to judgment, as Judge Gunn claims is required.

Judge Gunn also cites *Jones v. Health Res. Corp.*, 509 A.2d 1140 (D.C. 1986), but this case is also off point as it does not involve a default judgment ("The Jul. 2 judgment was not a default judgment." *id*) Judge Gunn cites some additional cases elsewhere in the Order, none of which support her insistence that a default judgement is defective if it does not include an explicit finding that the complaint sufficiently pled the cause of action

Judge Gunn's cases perhaps suggest that there may be some inconsistencies in the case law, possibly between state and federal courts or between defaults entered by the clerk for failure to respond and defaults entered by a judge as a discovery sanction. It could be that defaults entered by a judge as a sanction are treated differently, because the judge has presumably read the complaint and is aware of any deficiencies before the sanction is entered. Or it could be that parties who obstruct discovery to the point at which a default sanction is issued probably do not have valid defenses. Or it could be that that in a handful of cases the law was inconsistently applied. However, these issues do not need to be answered as part of

this appeal because none of the cases cited by Judge Gunn support her assertion that a plaintiff requesting a default judgment has any burden other than proving his damages and none of the cases provide any authority for the action Judge Gunn has taken – striking another judge's judgment.

Defendant has argued that if she had been represented by counsel, there were defenses that she could have argued when Judge Teel asked her why he should not enter judgment for the amount requested by Plaintiff. [10]

**7. Relief under Rule 60 (b) is not available for empty exercises.**

Even if there were case law supporting Judge Gunn's position, absent an allegation that Plaintiff did in fact fail to adequately plead the elements of defamation, there would still be no basis to overturn Judge Teel's judgment. The issue would only be relevant if the complaint was actually defective. Judge Gunn does not make such allegation.

**7. Relief under Rule 60 (b) is not available for empty exercise.**

Relief under Rule 60(b) is only available if there is a reason to believe that vacating the judgment would not be an empty exercise or a futile gesture. *Norman v. United States,* 467 F.3d 773, 775 (D.C. Cir. 2006). Also see." *Murray v. District of Columbia,* 52 F.3d 353, 355 (D.C. Cir. 1995). Indeed, given the blatantly

---

[10] Judge Gunn rejected the lack of counsel argument. "I don't find much weight in the lack of counsel, given the long history between the parties and the large numbers that were being utilized." (App. 933)

defamatory nature of the Reviews, the abundance of allegations in Plaintiff's complaint, and Judge Gunn's failure to identify any defects in the pleading, even if holding an "extra" hearing on the sufficiency of the pleadings were required, it would not lead to a different result and would therefore be an empty exercise.

**Conclusion**

The District Court should strike or overrule Judge Gunn's Memorandum Opinion and Order Granting Reconsideration and instruct her to allow Plaintiff to proceed to collect his judgment without further delay.

Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

Excluding the parts of the document exempted by Fed. R. Bankr. P. 8015(g) this document contains [12667] words. This document has been prepared in a proportionally spaced typeface using [Word] in [14 point Times Roman],

David Brooks                6/6/23

Respectfully submitted,

June 6, 2023        David Brooks
                    8302 Westmont Ter
                    Bethesda, MD 20817
                    dbrooksdc@comcast.net
                    (240) 386-8760

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of June, 2023, I served a copy of the foregoing pleading via email to Brian Browne.

David Brooks                              June 6, 2023